[J-6-2025] [MO: Dougherty, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | No. 32 EM 2023 |
| | : | |
| | : | On King's Bench petition from the |
| v. | : | order of the Philadelphia County |
| | : | Court of Common Pleas at No. CP- |
| | : | 51-CR-0407441-2004, dated May 5, |
| LAVAR BROWN | : | 2023, granting Brown's petition under |
| | : | the Post Conviction Relief Act and |
| | : | vacating the judgment of sentence |
| PETITION OF: FAMILY MEMBERS OF | : | entered on October 24, 2004, with |
| MURDER VICTIMS MICHAEL | : | the consent of the Commonwealth |
| RICHARDSON AND ROBERT | : | |
| CRAWFORD | | ARGUED: March 5, 2025 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE DONOHUE**                                    **DECIDED: June 16, 2026**

While I agree with the Dissenting Opinion that King's Bench review should not have been granted in this case,[1] a majority of this Court disagreed. Given that decision, I address the issues for which we granted King's Bench review.

In granting the petition of the family members of murder victims, Michael Richardson and Robert Crawford ("Family Members"), we agreed to review the order of the Philadelphia County PCRA[2] court to determine whether or not it erred in granting Lavar Brown ("Brown") relief. Error review was the only extraordinary relief requested by the Family Members because as amici in the PCRA court, they did not have the right to appeal the PCRA court's order. In addition, we sua sponte directed the parties to address

---

[1] Dissenting Op. at 3-15.

[2] Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.

the procedure that must be followed by a PCRA court in order to grant post conviction relief when that relief is based upon concessions of the parties. Order Granting King's Bench Jurisdiction, 32 EM 2023. As to the PCRA court order, I agree with the Majority that the PCRA court's failure to hold an evidentiary hearing violated our rules of criminal procedure. A remand is thus required. Majority Op. at 57. This is the extent of my agreement with the Majority. In all other respects, I dissent.

In my view, our decision in *Commonwealth v. Brown*, 196 A.3d 130 (Pa. 2018) ("*Brown I*") answers the question of what procedure must be followed and sets the guardrails for granting relief based upon concessions of error. We instructed PCRA courts that an independent review of the record is required when considering such a petition. That mandate presumes that the PCRA court will utilize its authority to conduct the proceedings in such a way that it is satisfied that the record supports relief. The Majority's fabrication of a third-party intervention rule only in Philadelphia County proceedings is unnecessary. Moreover, it undermines the authority of PCRA courts in Philadelphia County to control their own courtrooms and underestimates the ability of these courts to ensure the adequacy of the record presented by the parties. Most critically, the rule crafted by the Majority far exceeds this Court's authority under the Pennsylvania Constitution.

**The PCRA Court's Order**

Rule of Criminal Procedure 908 provides that "[e]xcept as provided in Rule 907, the judge shall order a hearing … when the petition for post-conviction relief or the Commonwealth's answer, if any, raises material issues of fact." Pa.R.Crim.P. 908(A)(2). As observed by the Majority, it is not whether the parties want an evidentiary hearing, but whether one is required. Majority Op. at 57. "[A]n evidentiary PCRA hearing is **required** when there is an outstanding issue of material fact." *Commonwealth v. Hutchinson*, 25

A.3d 277, 321 (Pa. 2011) (emphasis added). Here, throughout the proceedings, the PCRA court repeatedly articulated its belief that there were unresolved issues of material fact that needed to be resolved before a decision on the petition could be rendered.

At the outset, the PCRA court found the record to be insufficient with respect to Ronald Vann's ("Vann") statement "allegedly made implicating Kennisha Pa[i]ge [("Paige")][,]" which is why initially it announced that an evidentiary hearing would be required in line with its role under Rule 908. N.T., 7/8/2022, at 6. Additionally, the court was "interested in actually what happened, and [it did not] think [it was] clear from the submissions that [it] received." N.T., 8/11/2022, at 13. The PCRA court made similar statements repeatedly throughout these proceedings regarding evidence supporting the position that Vann actually implicated Paige in the robbery-homicide at Rite-Aid. *See, e.g.*, N.T., 7/8/2022, at 6-7 ("But on the existing record, it's my considered view ... that there is not enough information in the paperwork for me to grant the petition notwithstanding the fact that both parties are of the opinion that it should be granted."); N.T., 10/7/2022, at 13 ("I'm still not understanding how everybody thinks that paperwork establishes that ... I just don't get it."); N.T., 12/1/2022, at 8 ("[T]he record in front of me including the stipulation does not resolve the factual question of whether Mr. Vann actually identified Kennisha Paige as a participant in the Rite-Aid conspiracy."); *id.* at 10 ("It seems to me there's evidence on both sides, and I don't know how anybody could conclude conclusively that Vann actually identified Paige as being one of the participants in the homicide based on this record."); *id.* at 13-14 ("I'm pointing out that a key factual issue in my mind is not resolved on this existing record."). The PCRA court announced that it would hold an evidentiary hearing and identified certain witnesses to be called to testify in order to "get to the bottom of" what actually happened with respect to Vann's statements regarding Paige. *See, e.g.*, N.T., 7/8/2022, at 6-7 ("I'm going to require that

all of the prosecutors who participated in this case and whose conduct is at issue be subpoenaed to testify."). Ultimately, the only reason the PCRA court did not require a hearing was because "everybody connected with the case" did not think an evidentiary hearing was necessary as Brown, the Philadelphia District Attorney's Office ("DAO"), and the Family Members as amici all believed that the record sufficiently supported their respective positions. N.T., 12/1/2022, at 10. However, to reiterate, it is wholly irrelevant whether the parties wanted a hearing or not. The judge was plainly aware that there were outstanding issues of material fact and a review of the record substantiates that conclusion. Pursuant to our Rules of Criminal Procedure, an evidentiary hearing was required. *See* Pa.R.Crim.P. 908(A)(2). Thus, failing to hold such an evidentiary hearing was an error of law. With these evidentiary issues unresolved, the PCRA court could not grant relief. The error requires a remand to the PCRA court for a hearing.

Since the Majority agrees that this PCRA case must be remanded for a hearing, Majority Op. at 57, it is curious and suspect that it engages in an extensive evaluation of the probative value of the evidence. In doing so, the Majority concludes not only that the evidence submitted does not resolve all factual issues, but it characterizes much of the evidence as detrimental to Brown's position. This skewed evaluation of the evidence is inappropriate.

For example, the Majority strongly suggests that the placement of Paige's name on the 23rd District memorandum must mean that she was referenced in relation to "**other crimes**," rather than the Rite-Aid robbery and homicide. Majority Op. at 52 (emphasis in original). That may be true, or it may be that there is more than one reference to the robbery and homicide at Rite-Aid included in the memorandum. However, the Majority's suggestion that this placement or its clerical origin indicates a definitive answer one way or the other is pure speculation. *Id.* at 51-52. It is merely support for the conclusion that

this is a question that needs to be addressed at an evidentiary hearing. Additionally, I find troubling the Majority's evaluation of Detective Baker's memoranda wherein he recounts his search for Paige in response to Vann's statement. The Majority suggests that Detective Baker was only "informally" involved in the case, and then it proposes that somehow Detective Baker confused Paige and Lyons without any evidence to support that theory, aside from, again, mere speculation. *Id.* at 52-53. According to the evidence presented, Detective Baker spent time over the course of at least two days specifically investigating Paige. I see no reason to call that into question without evidence to the contrary. Whether he sought her out as a participant in the crime or as a witness to the crime is material to Brown's claims, which is precisely why an evidentiary hearing is necessary. On remand, the PCRA court must conduct an evidentiary hearing, and its failure to do so before ruling on Brown's petition was error.

**The Process in Concession of Error PCRA Proceedings**

As for the second issue (i.e., what process should courts follow in matters involving post-conviction concessions of error), it is my position that we resolved this issue in *Brown I*. We specifically ruled that "a district attorney's concession of error is not a substitute for independent judicial review." *Brown I*, 196 A.3d at 146. As we made clear in *Brown I*, a prosecutor has the discretion during post-conviction review "through the exercise of effective advocacy, to persuade the courts to agree that error occurred as a matter of law." *Brown I*, 196 A.3d at 146. The concession between the prosecutor and the defendant, however, cannot compel the PCRA court to automatically grant relief. *Id.* PCRA courts are expected to engage in "all necessary and appropriate judicial review" before making their decision one way or the other. *Id.* Nothing has changed since *Brown I*. Here, as in *Brown I*, our expectation for PCRA courts remains clear—we trust them to engage in independent judicial review. I note that the eight amici writing in

support of Brown and DAO recognize the capability of our PCRA courts to engage in independent judicial review and to utilize the various tools at their disposal to ensure the effective administration of justice.[3] To these amici, we need only reinforce our current system, not alter it by extraordinary means.[4] Like the amici, I continue to trust that PCRA courts, including those in Philadelphia County, are fully capable of fairly and justly adjudicating proceedings involving concessions of errors without expanding the statutory provisions of the PCRA. *Id.* Clearly, the Majority does not.

---

[3] *See, e.g.*, Quattrone Center's Amicus Brief at 7 (noting that, pursuant to *Brown*, PCRA courts may "permit[] relief only upon a showing of an underlying violation of the petitioner's rights that justifies PCRA relief"); 41 Current and Former Officials' Amici Brief at 17 ("[A]s neutral arbiters in our criminal legal system, judges have the responsibility to conduct 'independent judicial review' before accepting a confession of error."); PIPs' Amici Brief at 10 ("In *Brown* [*I*], this Court advanced a workable rule to prevent trial courts from acting as 'rubber stamps' of district attorneys' determinations on the merits of PCRA petitions."); Former Judges and Prosecutors' Amici Brief at 13 ("[C]ourts, faced with a questionable concession, are more than capable of getting to the truth.").

[4] *See, e.g.*, Quattrone Center Amicus Brief at 14 ("A clear pronouncement by this Court reinforcing the requirement of an independent review of the record by the PCRA court and a broad discretion to appoint amicus will enhance the integrity of the final judgment."); 41 Current and Former Officials' Amici Brief at 18 ("Given the guardrails already in place in post-conviction litigation … [the] proposed additional procedures are unwise and unnecessary."); PIPs' Amici Brief at 3 ("[T]he Court's existing precedents, including its prior review of this case in [*Brown I*], offer sufficient guidance, balancing recognition of concessions' important function in criminal proceedings with the need to preserve courts' role as final—and independent—legal arbiters."); CIUs' Amici Brief at 20 ("[T]rial courts should be accorded their traditional discretion to determine the appropriate procedures for resolving cases on their dockets, not handcuffed by mandatory procedural hurdles not endorsed by the legislature or necessary to the efficient and fair administration of justice."); Former Judges and Prosecutors' Amici Brief at 11 ("[T]rial courts are already proficient in the independent fact finding required in the case of a prosecutorial concession."); Ethics Scholars' Amici Brief at 12 ("[T]here is already a sufficient backstop that addresses Petitioners' concerns because trial courts already are not bound by the concessions.").

The Majority relies on cases handpicked by the Office of the Attorney General ("OAG") to demonstrate "unreliable concessions and erroneous grants of relief" by DAO.[5] Majority Op. at 91. To the contrary, from my reading, these examples demonstrate that these courts effectively engaged in independent review in conducting concession of error proceedings. The tools at a court's disposal ensure the effective administration of justice. In each of the cases discussed by the Majority that involved factual concessions,[6] the courts denied relief, demonstrating independent review of concessions of error. The courts, inter alia, determined whether there was a need for an evidentiary hearing based on any inadequacies in the record, *see, e.g.*, *Wharton v. Vaughn*, 2022 WL 1488038 (E.D. Pa. May 11, 2022); *Martinez v. Delbalso*, 2021 WL 510276 (E.D. Pa. Feb. 11, 2021);

---

[5] The parties—the Family Members, Brown, and DAO—barely, if at all, mention these cases. All of these cases have been laid out in the OAG's amicus brief, wherein it treats the instant case as just another piece of a "pronounced pattern of questionable concessions" by DAO. OAG's Amicus Brief at 44. The Majority simply accepts the OAG's summary of those cases and its conclusions without the benefit of their respective records to justify its sua sponte rulemaking. Majority Op. at 72-87.

[6] I take exception to the Majority's undiscerning portrayal of DAO's "misconduct" in the cases handpicked by the OAG to justify this extraordinary remedy. Majority Op. at 91 n.66. Some of these cases are examples of DAO acting as an advocate by presenting arguments to the court to advance unresolved legal propositions. *See, e.g.*, *Johnson v. Kerestes*, 683 F.Supp.3d 452, 465 (E.D. Pa. 2023) (arguing that courts do not "have the discretion to ignore an intentional waiver of all non-jurisdictional defenses and address defenses such as exhaustion and timeliness sua sponte[,]" which was rejected); *Brown I*, 196 A.3d at 142 (arguing that courts "must defer to the District Attorney's exercise of discretion in conceding sentencing error[,]" which we rejected) (internal quotations omitted); *Commonwealth v. Perrin*, 291 A.3d 337, 346 (Pa. 2023) (arguing that courts must accept "parties' stipulation" as to a witness's credibility, which we rejected). Advocates are entitled to make good faith arguments to extend or clarify the law. Pa.R.P.C. 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."). Of course, we can reject those arguments. The Majority equates advancing arguments that are ultimately rejected as misconduct by DAO. This is palpably incorrect. Simply because we disagree with a legal argument advanced by a party does not transform that party's advocacy into misconduct.

*Commonwealth v. Mickeals*, 335 A.3d 13 (Pa. Super. 2025); *Commonwealth v. Perrin*, 291 A.3d 337 (Pa. 2023); and invited participation of amicus curiae, *see, e.g.*, *Wharton*, 2022 WL 1488038, at *1; *Johnson v. Kerestes*, 683 F.Supp.3d 452 (E.D. Pa. 2023); *Artache v. Superintendent SCI Forest,* 2023 WL 8468613, at *4 (3d Cir. Dec., 7 2023) (unpublished); *Malone v. Smith*, 2023 WL 2351694, at *2 (E.D. Pa. Mar. 3, 2023) (unpublished); *Brown I*, 196 A.3d 130; *Commonwealth v. Murchison*, 328 A.3d 5 (Pa. 2024); *Perrin*, 291 A.3d 337; *Mickeals*, 335 A.3d 13. In each of the cases discussed by the Majority, the courts utilized existing resources to resolve the petitions without reliance on a concession of error. We are continuing to see PCRA courts in Philadelphia County rely on these tools in concession of error proceedings throughout the pendency of this case. *See, e.g.*, *Commonwealth v. Mickeals*, CP-51-CR-0000701-2013 (Phila. CCP Dec. 7, 2023) (denying a *Brady* claim based on DAO's concession of error after holding an evidentiary hearing and independently reviewing the record).

These same tools were available to the PCRA court in this case. Although that court erred by failing to hold an evidentiary hearing when it was required by our rules, it recognized its responsibility to exercise independent judicial review in accordance with the holding in *Brown I*. In the instant matter, in lieu of an evidentiary hearing, the PCRA court erroneously concluded that it could resolve contested issues by considering "exhaustive[]" briefing and conducting a months-long review of the record. N.T., 5/5/2023, at 4-5. The PCRA court did not err by blindly accepting the concession of error. It erred because it was persuaded by DOA, Brown and the Family Members to forego the hearing required by Rule 908(A)(2). Here, it was clear that an independent review of the record could not be accomplished without an evidentiary hearing to resolve factual disputes in the record before it.

The PCRA court recognized that it had the means available to enhance the record. While it denied the Family Members' intervention in the PCRA proceeding, the court permitted the Family Members to participate as amici to advance positions in opposition to Brown's petition. Unfortunately, the PCRA court succumbed to the entreaties of DAO, Brown, and the amici that an evidentiary hearing was unnecessary. The outcome may have been different if the required hearing took place. It was the PCRA court's original intention to require the testimony of prosecuting attorneys involved in the case whose conduct was questioned by DAO. *See* N.T., 7/8/2022, at 6-7 ("I'm going to require that all of the prosecutors who participated in this case and whose conduct is at issue be subpoenaed to testify."). Likewise, the PCRA court was appropriately skeptical as to why a person with firsthand information about the facts was not offering evidence. *See* N.T., 11/1/2022, at 10 ("I don't know why it's so hard to ask one of the many people who would actually have personal knowledge as to whether or not this happened[.]"). In this case, although certain individuals with firsthand information contained in the documents relied upon by Brown and DAO were deceased, several individuals with information about the documents and the investigation were not.[7] If an evidentiary hearing had been scheduled, it would have been within the purview of the PCRA court to request the testimony of those available witnesses. Further, while the Majority suggests that amici are generally not permitted to examine witnesses, Majority Op. at 93, I am not aware of such a limitation on the court's discretion to allow amici to cross-examine witnesses called by a party. In addition, it is clear that "where the interest of justice so requires, the court may examine

---

[7] Detectives Judge and Peters, and ADA Fisher were arguably available to testify. Majority Op. at 68. Detective Baker and Vann died before the proceedings commenced. *Id.* at 68 n.49.

a witness regardless of who calls the witness." Pa.R.E. 614(b).[8] Ultimately, the failure to produce evidence sufficient to resolve the disputed issues of fact would result in a denial of relief based upon Brown's failure to meet his burden, by the preponderance of the evidence, to prove his entitlement to relief.

The Majority is of the belief that DAO's failure to present the March 2003 memorandum to the PCRA somehow disproves that PCRA courts can adequately handle these concession of error proceedings. Majority Op. at 89 n.65. It is this failure that the Majority relies upon as evidence that DAO has continued to engage in its alleged practice of misconduct in the instant case. *Id.* at 89 ("The DAO has also time and again withheld relevant evidence from the courts. Presently, the DAO withheld the March 2003 memorandum."). And it is that purported failure that the Majority relies upon to justify its extreme course of enacting a rule specifically targeting Philadelphia County. However, I am of the opinion that the Majority overstates the significance of the March 2003 memorandum, in which Vann identified Lyons as part of the Rite-Aid murder.

---

[8] In his concurring opinion, Justice McCaffery accuses me of "favor[ing] transforming our PCRA courts into inquisitorial tribunals," based on his apparent disagreement with Pennsylvania Rule of Evidence 614(b). Concurring Opinion at 9 (McCaffery, J., concurring). I am of the belief that our PCRA courts are operating precisely how they are supposed to within the parameters of our existing laws. In fact, it is Justice McCaffery who wants to carry out a complete upheaval and restructuring of the PCRA system by judicial fiat. Under his scheme, the PCRA court would "no longer" act as a "neutral referee," but rather serve as a "guardian of the community's interest," effectively transforming the PCRA court into an interested party. *Id.* at 10. I cannot condone this Court restructuring PCRA courts or their role in such proceedings. The PCRA courts have and should continue to act as neutral and independent arbiters utilizing the tools that are already at their disposal. However, if a petitioner fails to present necessary witnesses with knowledge of the facts or declines to examine such witnesses regarding pertinent information, the PCRA court can reasonably conclude that this serves as sufficient grounds to deny relief. Nothing about this idea is novel or earthshattering. I am confident that our PCRA courts can continue to exercise their independent judicial review and determine when it is appropriate to utilize or not utilize the tools already at their disposal.

Brown's *Brady*[9] claim is that the Commonwealth "withheld evidence that [Vann] falsely accused an individual named Kennisha Paige of being involved in the January 19, 2003 Rite Aid robbery/murder[.]" Amended PCRA Petition, ¶ 63. Specifically, he maintains that detectives had investigated and suppressed the alleged false identification, "depriv[ing] the defense of evidence that could have been used at trial to show police knew Mr. Vann had provided untrue information and was capable of falsely implicating an innocent person in this crime simply to save himself." *Id.* ¶¶ 63-68. The only relevant question then is whether Vann falsely implicated Paige. I fail to see how the March 2003 memorandum "tended to support the fact Vann did not identify Paige," when it only shows that he identified Lyons and Brown in the crime. Majority Op. at 61. As the Majority acknowledges, this document is not "**dispositive** of Vann's failure to identify Paige[,]" and Vann very well could have still identified Paige, Lyons or anyone else. *Id.* at 61-62 (emphasis in original). If it does not contradict the claim that Vann identified Paige, but merely shows that Vann identified others, I am uncertain as to its relevance with respect to Brown's *Brady* claim. Hypothetically, there could be numerous other pieces of documentation that Vann identified other individuals, falsely or otherwise. That does not change the nature of Brown's claim that Vann falsely identified this particular individual, Paige. All that is to say, this document does not seem to be the smoking gun the Majority thinks it is.

Regardless, I have every confidence that PCRA courts in Philadelphia County are more than capable of utilizing the tools already at their disposal to adjudicate PCRA petitions based on concessions of error. We recognized this in *Brown I* when we held that in matters of post-conviction concessions of error, the PCRA courts must engage in

---

[9] *Brady v. Maryland*, 373 U.S. 83 (1963) (holding that a state violates a defendant's right to due process by withholding evidence that is favorable to the defense and material to guilt or punishment).

independent judicial review. *Brown I*, 196 A.3d at 146. To resolve the question that we accepted pursuant to our King's Bench authority as to what procedure must be followed in these concession of error proceedings, we need only reinforce our holding in *Brown I* and remind the PCRA courts to utilize existing procedures to assure the adequacy of the record. PCRA courts in Philadelphia County, as in all counties, are currently well-situated to review the merits of PCRA petitions based on concessions of error pursuant to our mandate in *Brown I*.

**Majority's Intervention Rule**

Despite the adequacy of the requirement for PCRA courts to conduct independent judicial review of the record, the Majority crafts a new rule for Philadelphia County only:[10]

> [I]n any PCRA case in which the DAO concedes relief, the PCRA court, before ruling on the concession, shall afford the OAG notice and an opportunity to intervene. Importantly, if the OAG elects to intervene in the case, it will not "replace" or supersede the DAO; the DAO shall remain in the case … . The OAG will merely become an additional, full party in the case providing its own perspective on the concession. The OAG may agree with the defendant and the DAO that relief is warranted, or it may not, but in either case its independent assessment and participation will foster reliable proceedings and correct results.[68]

---

[10] Stretching for a precedent to support the exercise of our King's Bench powers to effectuate its single-county rule, the Majority looks to the infamous "kids-for-cash" scandal, in which two former judges of the Luzerne County Court of Common Pleas received payments from two private for-profit juvenile facilities in exchange for the placement of juveniles. We exercised our King's Bench powers to investigate the scope of the scandal and provide relief to affected juveniles in the county. *In Re: Expungement of Juv. Recs. & Vacatur of Luzerne Cnty. Juv. Ct. Consent Decrees or Adjudications from 2003-2008*, 81 MM 2008 (Pa. 2009) (per curiam). The order was temporally limited and the relief afforded to the individual juveniles was not in itself extraordinary, only the blanket nature of the order was. It was a remedy for a well-documented conspiracy by judicial officers who were criminally convicted. In contrast, here, the Majority fashions a prospective rule applicable to a subset of cases based upon findings of misconduct by DAO without due process in making the findings and further based on an assumption that all concessions of error by District Attorney Larry Krasner's office are suspect.

68 In addition to third-party participation, the OAG requests access to the full files of the DAO, mandatory evidentiary hearings before relief is granted based on claims of fact, and entitlement to appeal as of right. *See* OAG's Brief at 47-50. The OAG can request discovery and evidentiary hearings pursuant to the existing rules governing these procedures. *See* Pa.R.Crim.P. 902(E), 907, 908, and 909(B). As a full party, the OAG may appeal the PCRA court's decision as of right. *See* Pa.R.A.P. 501; *Barnes*, 871 A.2d at 794.

Majority Op. at 95 & n.68. The Majority views the OAG as a third-party participant as offering an "independent assessment" that "will foster reliable proceedings and correct results." *Id.* at 95.

The Majority's intervention rule contravenes our Constitution's limited grant of authority to this Court to prescribe procedural rules. PA. CONST. art. V, § 10(c) ("The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts[.]"). Because our rulemaking authority extends only to procedural law, we cannot enact rules that establish or modify substantive law. Generally, "substantive laws are those which affect rights, while procedural laws are those which address methods by which rights are enforced." *Morabito's Auto Sales v. Dep't of Transp.*, 715 A.2d 384, 386 (Pa. 1998). Although the demarcation between substantive and procedural laws is sometimes difficult to determine, I believe it is quite clear that the Majority's rule is substantive in nature. *Id.* It is not merely a procedural rule that touches upon substantive rights, as it actually establishes substantive rights in the OAG where they otherwise do not exist.

The Majority dismisses the notion that its rule is substantive because it claims that the substantive rights of a petitioner and DAO are not impacted whatsoever by the intervention of the OAG. Majority Op. at 97. However, what it ignores is that, absent the

Majority's proposed rule, the OAG[11] has no legal right or interest in a PCRA proceeding.

The Majority believes that because our procedural rules address intervention, its rule is

---

[11] The Majority is, at best, insensitive to public perception with its designation of the OAG as a welcome "intervenor" whenever District Attorney Larry Krasner's office concedes post-conviction error. As identified by Brown, DAO, and many of the amici, the OAG is populated by attorneys who were part of DAO's prior administration. After District Attorney Larry Krasner was elected, many former prosecutors from DAO relocated to the OAG. *See* Ryan Briggs, *Year of uncertainty sees top Philly DA staffers flee to AG Shapiro*, CITY & STATE PENNSYLVANIA, Jan. 18, 2018 https://www.cityandstatepa.com/politics/2018/01/year-uncertainty-sees-top-philly-da-staffers-flee-ag-shapiro/364820/. If DAO is conceding error in the prior administrations' convictions, those former DAO prosecutors (now part of the OAG) will be tasked with litigating the propriety of their own prosecutions. In this case, the attorney who is the principal signatory to OAG's amicus brief and who presented oral argument in this matter was involved in Brown's first PCRA petition in a supervisory capacity. Brown's Brief at 25-26; DAO's Brief at 54-55; OAG's Brief at 58. It is, in part, conduct under his supervision that is being conceded as error by the current DAO. Brown's Brief at 26-27; DAO's Brief at 54-55. In addition, DAO alleges that this same attorney "previously played a direct or supervisory role in at least 70 of the 115 cases identified in the OAG's list of DAO concessions." DAO's Brief at 54. The designation as intervenor of an office staffed with attorneys with a potential bias in favor of upholding convictions they procured raises a question about the neutrality of perspective that would be provided to the PCRA court, if this is indeed what the Majority seeks. *See* Majority Op. at 95 (claiming that its rule provides that a third party will conduct an "independent assessment" to "foster reliable and correct results").

The Majority observes that this Court has invited the OAG to participate as amicus in past cases where DAO has made concessions. Majority Op. at 99 n.73 (citing *Murchison*, 328 A.3d 5; *Perrin*, 291 A.3d 337; *Commonwealth v. Drummond*, 285 A.3d 625 (Pa. 2022); *Brown I*, 196 A.3d 130). What the Majority ignores is the sharp distinction between participating as amicus and as a party. As to amicus participation, the examples it cites are not garden-variety PCRA matters. Each of those cases involved first impression interpretations of law with a statewide impact. *See, e.g.*, *Murchison*, 328 A.3d at 17 (holding that the standard for an after-discovered evidence claim based upon post-conviction DNA testing is preponderance of the evidence); *Perrin*, 291 A.3d at 346 (rejecting the argument that courts must accept parties' stipulation as to fact and credibility of a witness); *Drummond*, 285 A.3d 625 (Pa. 2022) (addressing whether a "proof beyond a reasonable doubt" jury instruction analogizing jurors' hypothetical decision-making regarding surgery involving a "precious one" violates a defendant's due process rights); *Brown I*, 196 A.3d 130 (Pa. 2018) (addressing whether a PCRA court must accept a district attorney's concession of error to automatically grant relief). We invite the OAG to participate as amicus in such proceedings to benefit from its perspective on legal questions of statewide import. And we regularly do so in cases from counties (continued…)

on safe ground.  Majority Op. at 98-99.  However, without a pre-existing legal interest in the PCRA matter, the Majority's proposed intervenors fall outside the bounds of our procedural rules.  For example, pursuant to Pa.R.C.P. 2327, a person is permitted to intervene in an action (subject to other rules) if the person can establish that they have an existing legal interest in the action or its outcome.[12]  The Majority's rule bears no

---

other than Philadelphia.  *See, e.g.*, *Commonwealth v. Arnett*, 353 A.3d 705 (Pa. 2026) (inviting the OAG to participate as amicus to address the jurisdiction of courts of common pleas regarding SORNA registration requirement challenges and the applicability of *Commonwealth v. Torsilieri*, 316 A.3d 77 (Pa. 2024) in a case arising out of York County); *Commonwealth v. Rondon*, 314 A.3d 700 (Pa. 2025) (inviting the OAG to participate as amicus to address the interpretation of our laws governing forfeiture in bail proceedings in a case arising out of Cumberland County); *Commonwealth v. Butler*, 226 A.3d 972 (Pa. 2020) (inviting OAG to participate as amicus to address the constitutionality of the procedure used to designate certain individuals convicted of sexual offenses as sexually violent predators in a case arising out of Butler County).

In contrast, the Majority allows the OAG to become a party to a case, developing the record and potentially driving the outcome of the PCRA proceedings where attorneys on its staff may have been responsible for procuring a PCRA petitioner's original conviction. This is in stark contrast to acting as a friend of the court.

[12]  Rule 2327 provides:

> At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> (1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or
>
> (2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or
>
> (3) such person could have joined as an original party in the action or could have been joined therein; or

(continued…)

relationship to our existing procedural rules governing intervention which provide the mechanism for persons with a legally recognized interest in an action or its outcome to participate in the action. The Majority attempts to circumvent this problem by asserting that the General Assembly has already established the proposed intervenors' legal interest. Majority Op. at 100 (citing 71 P.S. § 732-204(c)). However, the authority relied upon by the Majority does not establish the required legal interest for the OAG to intervene in a PCRA proceeding.

The Majority asserts that Subsection 732-204(c) of the Commonwealth Attorneys Act ("CAA") operates in such a way that the OAG could intervene in "any civil action." *Id.* at 101. However, the Majority overstates the reach of Subsection 732-204(c) of the CAA. The CAA provides, in relevant part, the following:

> **(c) Civil litigation; collection of debts.**--The Attorney General shall represent the Commonwealth and all Commonwealth agencies and upon request, the Departments of Auditor General and State Treasury and the Public Utility Commission in any action brought by or against the Commonwealth or its agencies, and **may intervene in any other action, including those involving charitable bequests and trusts or the constitutionality of any statute.** The Attorney General shall represent the Commonwealth and its citizens in any action brought for violation of the antitrust laws of the United States and the Commonwealth. The Attorney General shall collect, by suit or otherwise, all debts, taxes and accounts due the Commonwealth which shall be referred to and placed with the Attorney General for collection by any Commonwealth agency … .

---

> (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Pa.R.C.P. 2327; *see also* Pa.R.J.C.P. 1133 (intervention in juvenile dependency cases); Pa.R.A.P. 1531 (intervention in petition for review proceedings); Pa.R.A.P. 3775 (intervention in proceedings against insurers).

71 P.S. § 732-204(c) (emphasis added). Undoubtedly, Subsection 732-204(c) establishes the parameters for the types of civil litigation in which the OAG has a direct statutorily-defined interest. Initially, the statute sets forth that the OAG is the party expected to represent the Commonwealth when lawsuits are brought by or against the Commonwealth or its agencies. *Id.* It then explains that the OAG "may intervene in any other action[.]" *Id.* The Majority construes this intervention language without limitation.

Although Subsection 732-204(c) states that the OAG may intervene "in any other action," it then sets forth examples that clearly establish limitations on the types of civil matters where intervention is permitted. It is well-established that "general expressions such as 'including,' or 'including but not limited to,' that precede a specific list of included items are to be considered as words of enlargement and not limitation." *Dep't of Env't Prot. v. Cumberland Coal Res.*, 102 A.3d 962, 976 (Pa. 2014). Specifically enumerated items in a list are not meant to be exclusive of all other items in that list; however, we do not construe the surrounding terms in a statute as providing the broadest possible reading. *Id.* Under the statutory construction doctrine of ejusdem generis, "where specific terms setting forth enumeration of particular classes of persons or things follow general terms, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." *Id.* In other words, "the presence of such a term as 'including' in a definition exhibits a legislative intent that the list that follows is not an exhaustive list of items that fall within the definition; yet, any additional matters purportedly falling within the definition, but that are not express, must be similar to those listed by the legislature and of the same general class or nature." *Id.*

The examples enumerated in Subsection 732-204(c) of the CAA are civil cases that are separately addressed by statute which establish the OAG's interest in the proceedings, giving rise to this Court's procedural rules requiring notice to the OAG.

Specifically, Subsection 732-204(c) provides that the OAG "may intervene in any other action, **including those involving charitable bequests and trusts or the constitutionality of any statute**[.]" *Id.* (emphasis added). The General Assembly has authorized the OAG's involvement in these cases. *See* 20 Pa.C.S. § 7740.3(d)-(e) (highlighting that the OAG is to receive notice of matters involving charitable trusts); 20 Pa.C.S. § 7710(d) ("[The OAG] has … the right to notice of any proceeding or nonjudicial settlement agreement in which there is a charitable interest or purpose."); *see also* 71 P.S. § 732-204(a)(3) ("It shall be the duty of the Attorney General to uphold and defend the constitutionality of all statutes so as to prevent their suspension or abrogation in the absence of a controlling decision by a court of competent jurisdiction."). It is this explicit legislative authorization that permitted this Court to promulgate rules directing parties to submit notice to the OAG in these types of actions. *See* Pa.R.C.P. 235 ("In any proceeding … in which an Act of Assembly is alleged to be unconstitutional or a charitable bequest or trust is involved and the Commonwealth is not a party, the party raising the question of constitutionality or the plaintiff in a proceeding involving a charitable bequest or trust shall promptly give notice thereof by registered mail to the [OAG.]"); *see also* Pa.R.O.C.P. 4.4(a) ("In every court proceeding involving or affecting a charitable interest … at least 20 days advance written notice thereof shall be given to the [OAG.]"); *see also* Pa.R.A.P. 521 ("It shall be the duty of a party who draws in question the constitutionality of any statute in any matter in an appellate court to which the Commonwealth or any officer thereof, acting in his official capacity, is not a party … to give immediate notice in writing to the [OAG.]").

By providing these examples immediately after Subsection 732-204(c)'s pronouncement that the OAG may intervene in "any other action," the General Assembly exhibited its intent to limit the OAG's ability to intervene in only certain civil matters.

Specifically, it narrows the OAG's participation as an intervenor to those matters in which its interest has been explicitly recognized by statute. For example, the OAG has an express statutory right to bring a claim under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). 73 P.S. § 201-4. As a result, the OAG has the ability to intervene pursuant to Subsection 732-204(c) when another authorized entity brings the same type of lawsuit. Duality of legal interests are likewise recognized in, for example, the Clean Streams Law, 35 P.S. § 691.601(a), and nuisance and abatement provisions for nutrition and odor management under our agricultural laws, 3 Pa.C.S. § 514(c), setting the stage for the OAG's intervention in proceedings commenced by another authorized entity.

There are likely many other instances in which the General Assembly has authorized the OAG's participation in civil matters, thus triggering the authority to intervene pursuant to Subsection 732-204(c). However, one thing is patently clear: the PCRA does not authorize the OAG to participate in such proceedings.[13] Accordingly, nothing in Subsection 732-204(c) provides the OAG with a legal interest that transforms the OAG into the legislatively authorized intervenor that the Majority envisions in PCRA proceedings.[14] Majority Op. at 106.

---

[13] The Majority contends that the OAG's status as "chief law enforcement officer" establishes its interest "in criminal judgments and issues." Majority Op. at 104. However, under the CAA, the OAG has only a limited legal interest. The Majority completely ignores that even in criminal cases, the OAG cannot simply intervene in a prosecution. It must go through the process of actually superseding a local district attorney's office. 71 P.S. § 732-205(a)(4)-(5). Since, under the CAA, the OAG had no legal interest in Brown's underlying criminal case, the OAG has no legal interest in this civil PCRA proceeding.

[14] The Majority's assertion that "it is commonplace for the OAG to represent the Commonwealth in PCRA proceedings" is not only hyperbole, but it ignores the limited circumstances in which the OAG represents the Commonwealth in such matters. Majority Op. at 104 & n.75. In at least three of the examples cited by the Majority, the OAG was involved in the original criminal proceedings, thus establishing its interest in defending the convictions it obtained in the subsequent PCRA matters. *See, e.g.*, *Commonwealth v.* (continued…)

Article IV, Section 4.1 of our Constitution establishes the role of the Attorney General who "shall exercise such powers and perform such duties **as may be imposed by law**." PA. CONST. art. IV, § 4.1 (emphasis added). It is, therefore, the General Assembly, not this Court that has the authority to dictate when and how the Attorney General, through the OAG, is to exercise its duties.[15] The CAA sets the parameters for how the OAG, headed by the Attorney General, is to exercise its powers and perform its duties. 71 Pa.C.S. §§ 732-201–732-208, 732-301, 732-303, 732-402–732-403, 732-501, 732-506. The Majority is attempting to manufacture an interest for the OAG that the General Assembly did not see fit to create. This attempt to expand the duties beyond those established by the General Assembly violates the separation of powers doctrine and creates substantive law outside of our constitutional grant of authority. Conferring the rights of a party on an entity that otherwise has no interest in the proceeding cannot be classified as a procedural rule, despite the Majority's insistence to the contrary. Such a proposal is undoubtedly substantive rulemaking. In sum, the Majority cannot create a

---

*Taylor*, 634 A.2d 1106 (Pa. 1993) (OAG representing the Commonwealth in Taylor's direct appeal from sentences of death); *Commonwealth v. Brown*, 141 A.3d 491, 497 (Pa. Super. 2016) (OAG prosecuted the underlying criminal proceeding); *Commonwealth v. Miller*, 2023 WL 7179446, at *1 (Pa. Super. Nov. 1, 2023) (same). In the remaining examples cited by the Majority, the OAG represented the Commonwealth where the relevant district attorney's office had an actual or apparent conflict of interest. *See, e.g.*, *Commonwealth v. Ahmad*, 2025 WL 2808637, at *1 (Pa. Super. Oct. 1, 2025) (OAG represented the Commonwealth because defendant's counsel was the law partner of the District Attorney-elect at the time Ahmad filed his PCRA petition); *Commonwealth v. Muhammed*, 2024 WL 4892509, at *1 n.1 (Pa. Super. Nov. 26, 2024) (OAG represented the Commonwealth in PCRA proceeding because District Attorney Krasner had represented the defendant at trial); *Commonwealth v. Oglesby*, 2020 WL 7780108, at *4 (Pa. Super. Dec. 30, 2020) ("PCRA counsel ... is the former law partner of [District Attorney Krasner]. The [OAG] has handled all matters relating to Mr. Krasner's former criminal defense practice to avoid any conflicts of interest or appearance of impropriety.").

[15] Although our Constitution refers only to the position of the Attorney General, its duties and responsibilities are carried out through the OAG, which is "headed by the Attorney General." 71 P.S. § 732-201(a).

procedure to provide the OAG with notice of a proceeding to solicit intervention where the OAG lacks a recognized legal interest, which only the General Assembly can create. By doing so, the Majority violates our Constitution.

Finally, this Court cannot invoke King's Bench powers to counteract policy choices of elected officials. By restructuring PCRA procedures in Philadelphia County where the elected District Attorney concedes error, the Majority abuses our King's Bench authority. Creating an intervention rule in these isolated concessions of error PCRA proceedings diminishes the District Attorney's authority and interferes with his obligation to rectify the injustice of a conviction improperly obtained.[16] Our judges in Philadelphia County are capable of overseeing concession of error PCRA proceedings through an independent review of the record by conducting proceedings to satisfy themselves that the record either does or does not support relief. The Majority's flex of King's Bench power to

---

[16] The Majority suggests that DAO has an insidious agenda, emphasizing that it has conceded prosecutorial error that afforded defendants criminal and civil relief in predominantly capital murder cases. Majority Op. at 71 ("While the DAO does not confine its concessions to cases of actual innocence, it does, for the most part, limit its concessions to the most serious cases. Overwhelmingly, the DAO's concessions have been in murder cases. … There has been a particular focus on capital cases. … Some defendants awarded relief under the DAO's concession program have gone on to receive significant, multi-million-dollar payments from the City of Philadelphia in settlement of civil lawsuits"); *id.* at 91 (insinuating that DAO has made these concessions for "purely personal, political, ideological, policy, or other non-legal reasons"). As a minister of justice, it is the prosecutor's "duty both to respect the rights of the defendant and to enforce the interests of the public," ensuring that "the defendant is accorded procedural justice [and] that guilt is decided upon the basis of sufficient evidence." *Commonwealth v. Clancy*, 192 A.3d 44, 52 (Pa. 2018) (citations and quotations omitted); Pa.R.P.C. 3.8, cmt. 1 ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate."). Our laws mandate "that a fair trial be afforded in every cause regardless of the malevolence of the crime or the impressiveness of the evidence tending to establish guilt." *Commonwealth v. Richardson*, 383 A.2d 510, 514 (Pa. 1978). This responsibility continues throughout every stage of criminal litigation, regardless of the severity of the crime. I reject the Majority's insinuation that prosecutors' responsibilities to justice and due process depend upon the nature of the crime.

restructure PCRA concession of error proceedings in this manner is an abuse of this extraordinary power.

I concur in the Majority's decision to remand this matter to the PCRA court to conduct an evidentiary hearing as required by Rule 908(a)(2). I dissent from the remainder of the Majority Opinion.

Chief Justice Todd joins this concurring and dissenting opinion.